22-1767 Aamir Cooper v. American University Ms. Park for the appellant, Mr. Rennie for the appellant. Good morning, Council. Ms. Park, please proceed when you're ready. Good morning, Your Honors, and may you please support. My name is Sumi Park, representing appellant Mr. Aamir Cooper. Summary judgment, I would like to reserve two minutes for rebuttal. Summary judgment in this case was not warranted for two main reasons. One, because there is a genuine dispute of material fact regarding whether the purported comparators were similarly situated based on comparably serious acts. And second, there was evidence of inconsistent application of the progressive disciplinary policy. And third, the district court made its decision partly based on focusing on the irrelevant similarities, so similarities that were not actually considered, dissimilarities that were actually not considered by the decision makers. We also believe that the university did not show that it held a reasonable and honest belief in the reason for terminating him, which is that Cooper committed sexual harassment. And lastly, if I have time, I would like to just briefly touch upon the suspension issue, but if I do not, I would like to respectfully restate regarding that matter. First of all, Cooper provided evidence of similarly situated individual, Lieutenant R.S. With the permission, I would like to just refer to her as the lieutenant. There is no other lieutenant that is relevant in this case. So, Lieutenant R.S. was comparable to Cooper based on Wheeler v. Georgetown University Hospital, a case from this circuit, because it was reasonably inferable and a reasonable jury could find that both the lieutenant and Cooper were accused of committing sexual harassment. And the sexual harassment is a category of misconduct that is stated in the university's sexual harassment and discrimination policy. Like in Wheeler, Nurse Wheeler proposed several reported, proposed comparators, and the record in Wheeler showed that although their actions were sort of labeled slightly differently, I think Nurse Wheeler was fired for bad performance and failure to follow the university's, excuse me, the hospital's policies, and the proposed comparators had engaged in actions that involved misadministration of medicine and also… Is someone who commits 10 violations of policy comparable to somebody who commits only one violation of policy? Your Honor is asking under Wheeler. Under Wheeler, under all the case law? I think based on the case law, the prior bad performance or prior misconduct can be relevant. In Wheeler, I believe Georgetown pointed out that Ms. Wheeler had… …and they're the same category. Are those, and everything else about them is the same. Are those two people comparable under our case law? I don't think the number of actions that constitute the violation of the one policy should matter too much as long as the court and the employer can assess the seriousness of the actions just based on the overall perspective of the misconduct. So one single incident leading to one violation of the university policy may be just as serious as several not-so-serious violations of the same policy. I don't understand how that can be. I mean, if you were given a quiz in school, there's 20 questions. Is a person who misses one question supposed to get the same grade as somebody who misses 10 questions? So I may be understanding Your Honor's question incorrectly, but as it applies to this case, I know that Cooper has like four or five complaints that were made against him. And they found him in violation of level three of the university policy. And I think the lieutenant has like two complaints against her. But underlying the two complaints are several different incidents where she engaged in the malicious sexual gossip. So in that sense, we don't think that it should make a difference. There are several incidents that led to the complaint or the number of the complaint. Maybe one way to ask the same question that Judge Wilkins was getting at is this. Suppose that two people are asked the same question. Did you get an A in the class? And one of them got an F. And the other one got a B. They both could say no. But doesn't it seem like there's a pretty big difference between the person who got the B and the person who got the F? So in Your Honor's hypothetical, the person who got the F, is that Cooper? I'm not even necessarily trying to relate it to Cooper. I'm just saying that just because at some level of generality you could describe two people as similarly situated in the abstract, for instance, two people who didn't get an A, it seems like, for a lot of reasons, they're not similarly situated because one failed and the other one just barely missed the A. So it doesn't seem like it's enough as a matter of law to say that both the lieutenant and Cooper could, at a high level of generality, be described as similar in that they engaged in misconduct or that they engaged in misconduct that had some sexual component when the underlying conduct actually is quite distinct. Yes, Your Honor, but I actually don't think this wide—well, I don't want to call it wide, but quasi-wide reading of Wheeler is inconsistent with the other precedents from this circuit. For example, I'm not aware of a case where the court just zoned in on the, you know, the factual differences to consider their actions, to find their actions to be completely dissimilar. For example, in Burleigh, I do believe the court there said, well, the underlying misconduct is different, but it's because it's contributed differently to the train derailment, which was the reason why the plaintiff was fired. And the court found that Amtrak reasonably found that the purported comparator had less of a role, and so his misconduct was less serious than the plaintiff's. And that justified—so that justified viewing them in a dissimilar manner. But to answer Your Honor's question, so we do understand that there are some factual discrepancies between Cooper and the lieutenant's misconduct, but I think it just comes down to how the university characterized it. Like, one was characterized as using a pseudonym and approached the woman in an inappropriate manner, and the other one was accused of gossiping. But at the end of the day, they both engaged in actions that involved— purportedly involved inappropriate sexual conversations. And if you look at the university's sexual harassment policy, there's like 10 different categories of misconduct involving sex. So sexual harassment is barely one of them. There's sexual assault, rape, more serious categories as well. Arguably, R.S.'s conduct falls into two of them, but one of them is sexual harassment, and that's where her actions and Cooper's overlap, and it should be viewed similarly, we believe. Even if there are factual discrepancies, because they wouldn't have to be judged by the same standard. If they are reasonably in violation of the same policy, same standard, then it does not make sense to differentiate them on the small differences when the record does not show that it was the small differences that made the discipline distinct and different. I know you wanted to reserve some time for rebuttal. I do. Make sure my colleagues don't have further questions for you at this time, and we'll give you some time for rebuttal. Thank you. Thank you. Thanks, Mark. Mr. Remy? Maybe I will just go to the suspension issue. I'm happy to take any questions on the termination issue, but I agree with everything that has come out during the argument just now. These are different types. That's our position, different categorically, different violations by these two individuals. But the suspension issue, this is the Chamber's case. It's a relatively new case, so I thought I'd spend a moment on it. Why isn't your first argument that the district court ruled that there was no clear error, which is required to grant the motion for reconsideration because the suspension wasn't raised in the complaint? Why isn't your argument that that ruling should be affirmed? Your Honor, so the district court agreed to the argument subsequently, and our position is that it wasn't raised in the complaint, it was just raised in our position. You say that in your brief, but I mean, I don't understand why you don't say it stronger because district court's first ruling was under Rule 59E, you don't prevail because there's no clear error, full stop. And then the district court says, nevertheless. So as a good district court judge would do, they have belt and suspenders. Why aren't you relying on the belt? Why are you going to the suspenders? Well, I just thought we'd hit the district court's main opinion, Your Honor, on that, because they just sort of go right past it. The judge goes right past that issue. I do believe that not only was it not raised in the complaint, but he took deposition testimony where Mr. Cooper testified that, yeah, his claim in the case was that he was terminated inappropriately. He actually added a little flavor to that. So the investigation was conducted unfairly. So it wasn't as if it was just a yes or no answer. He gave his statement. And so maybe we should have emphasized that a little more, Judge. But the district court, I don't really understand how the district court can say there was no clear error and then go on to say, nevertheless, it was raised appropriately. That's probably why I didn't focus on that clear error point, Judge. It doesn't make a lot of sense. Maybe it's just a belt and suspenders argument, but I don't believe it was raised appropriately. If determination ultimately should be upheld, then what is the injury from him being put on paid administrative leave? Because if determination was correct, then he's fired and he gets no salary. So it's almost a benefit for him to be put on paid administrative leave for a while until the termination happens. I'm just not understanding what the injury is here. We don't believe there's an injury. That's why our argument is there's no adverse action here. The argument has always been that the injury is his lack of access to the pool because he was participating in the law fit program and he had an underlying health condition, and so swimming fit very well with his position. This is the argument. Of course, the point is that he was suspended from going to the pool before he was suspended with pay. In other words, after the accusations by these five lifeguards, right, that he was sexually harassing them, it's undisputed that he was told not to go back to the pool. Now there's some dispute over whether that was an instruction versus direct order. There's no doubt there was a conversation with a captain where he was told not to go back to the pool. So there is no— But the district court didn't seem to resolve that. The district court seemed to have acknowledged that there was a dispute about whether it was an order or whether it was just a suggestion. We agreed with the district court that it doesn't matter. There was some indication that he was not to use the pool, and there's no— and it's undisputed that he was not—whether it's a suggestion, an instruction, or order, all those words have been used. That came—that was directed at him before the paid suspension. So in other words, the plaintiff's hook into a damage from this paid suspension, which is the lack of use of the pool, is not related to suspension. Isn't it materially different if a supervisor says, you know, maybe you shouldn't do that anymore, shouldn't go there anymore, versus don't go there anymore? I mean, why aren't those two things materially different? Your Honor, because the reason that distinction doesn't matter here is because— so the alleged damage from the suspension, the suspension from the university's workforce, the paid suspension, is I wasn't allowed to use the pool. But whether it was just a suggestion or whether it was once he goes—or an order, once he goes back to the pool, it's clear he was not going to be able to continue using the pool, whether they put him on paid suspension or not. And we all agree it's reasonable in these factual circumstances, remember the police department using an alias for talking to students at the pool, that telling him not to use the pool while they investigate this is not an adverse employment action and is perfectly reasonable for him to do. They'd be derelict if they let him go back to the pool in that circumstance. And my only point here is that I agree with Your Honor that there is no adverse employment action because there is no damage from the paid suspension because he was not going back to the pool whether he was put on paid suspension. I think there's a difference between saying there's no adverse action and saying that there's no adverse action that's based on an illicit characteristic. It is, isn't it? It is adverse not to be able to go to the pool. It's just everybody can understand why he can't. There's two steps there, Your Honor, right? There has to be an adverse employment action. And the next question is, is it based on an illicit characteristic? The district court ruled, right, and the last argument here, a winning argument, is that whether it's going back to the pool or getting a paid suspension, none of that had anything to do with race or gender. Right. That's clear. But even the step before that, should we even get to that point, is being on a paid suspension or being not allowed to use the pool in these circumstances an adverse employment action? But I don't understand. I mean, on the last point, you might well have a forceful argument, which is the district court did say that the administrative leave, paid administrative leave, was not based on race or any illicit characteristic. But after Chambers, your argument, I guess, is that even if an employer decided to place people on administrative leave, albeit with pay, purely on the basis of their race, that that's not actionable under Title VII. Well, Your Honor, that's kind of looking at it in sort of the last point first. Right? I think our point is that to have an act to after Chambers. But I think that has to be your argument. It's not looking at the last point first. No, no. Your Honor, I don't think so. Can I finish? It's not looking at the last point first because if I'm taking the last point out of play, I'm saying let's assume it is race-based. Your argument, I think, as I understand your brief, is that an employer, nonetheless, can lawfully decide to place people on administrative leave based on their race because placing somebody on administrative leave is not an adverse employment action. That is our argument. Right. And the reason for that is because an adverse employment action is the first inquiry in a Title VII case. And so Chambers—right? So there was a Douglas case that said when it's not an obvious adverse impact, you have to have objectively tangible harm. And I guess the question is, does Chambers obliviate that and say that that no longer exists, that everything that happens at work is an adverse employment action? Or does Chambers take the position, how I read it, which is that a transfer isn't obvious. It does have an obvious harm because one of the lines in that opinion is that the job you hold is essence to the employment relationship. So, of course, if you don't get the job you want, whether your pay would have been the same and your hours, it doesn't make a difference. I don't think that ruling obviates the need for an adverse employment action. They may well not, but I guess the question is being placed on administrative leave without pay, with pay. I mean, I'm sorry, with pay. Even with pay. Being placed on administrative leave even with pay you think is not an adverse employment action. I think that when there is allegations of sexual harassment and someone is placed on administrative leave with pay during the pendency investigation, and that leave ends when the investigation ends. It actually doesn't start. What if the investigation takes five years? There could be a limit, Judge. I'm not asking, saying there's never a reasonableness standard. But to be reasonable, what is an employer supposed to do? I mean, what if it's in an office? People are all milling around in the same place. Right, but all of that just goes to whether it's a valid administrative leave, and it may well be a valid administrative leave. It doesn't mean that administrative leave is not an adverse employment action as a matter of law. It just means that an administrative leave very often can be totally justified, and it may be necessary in a lot of situations. The question is whether an administrative leave based on race is just, as a matter of law, non-actionable under Title VII, which is your position. I mean, you may well be right that administrative leave in the circumstances of this case and the circumstances of many cases is entirely reasonable and necessary to administer a safe and effective workplace. That just seems to me to be quite different from saying administrative leave, even with pay, as a matter of law, is never actionable. We can take that argument further, then, right? We can say, well, the provision of napkins in certain lunchrooms, is that an adverse employment action? Well, of course. I mean, you can say, is a non-adverse employment action an adverse employment action? The answer to that is going to be no. The question is whether an administrative leave is, as a matter of law, not an adverse employment action. And I'm just not sure how that could be the case, even if it's with pay, because going on administrative leave, even with pay, can very well be seen as adverse to employees. They'd rather be in the workplace. Not everybody, but certainly some people would rather be in the workplace. There's all kinds of things you're missing out in the workplace. Now, again, it may be justified that you're on administrative leave, but the notion that, as a matter of law, administrative leave, even without pay, is non-actionable because it's never an adverse employment action seems to me to be quite a surprising argument. There are a lot of courts that have – there's a lot of case law behind that. But, Your Honor, we're not taking the position that administrative leave with pay, no matter what the circumstances or the length, could never be an adverse employment action. I agree, that would be unreasonable. But looking at it not for the issue of was it based on race or not, without getting to that issue, saying in these factual circumstances, it's placing someone on administrative leave, the length of it for one month, the length of the investigation. And the district court, was that your only argument against the motion for reconsideration? No, Your Honor, there were three arguments. What were the other two? It wasn't raised below that it's not an adverse employment action and that there's no evidence that it was based on race because, obviously, he wasn't on leave. It wasn't pretextual. There's no evidence at all that it's related. This was a motion for reconsideration on which the judge ruled after granting summary judgment. Our review of a summary judgment is de novo. Is that also true for a motion for reconsideration, a de novo review? Your Honor, I believe that's the case. I thought it was abuse of discretion. Well, abuse of discretion on the granting of the reconsideration, right, but then the judge then grants summary judgment in the motion for reconsideration. So it's sort of right that in the motion for reconsideration, the court grants summary judgment. Doesn't he revise his summary judgment? Essentially, the court does. Why should that be de novo review? So if the judge said this is not an adverse employment action, we could affirm on the basis that there's no reasonable juror who could find it to be pretextual. Yes, Your Honor, we could affirm on that basis. The court does essentially amend the summary judgment motion to address this issue in the reconsideration. And the court does say that there's no evidence that it's based. You get both the issues. The court finds that no adverse action and then no evidence. And isn't it true that plaintiff did not dispute that the university was given these complaints and was investigating these complaints before he was placed on paid administrative leave? Oh, yes, there's no dispute of the timeline. There's no dispute as to what the students said during the investigation. There's no dispute as to the – that's all in dispute. So isn't it essentially undisputed that there is no pretext? At least so, Your Honor, that's our position. Let me make sure my colleagues don't have additional questions for you. Thank you. Ms. Park, we'll give you the two minutes you asked for for rebuttal. Thank you. Okay. So to answer Judge Wilkinson's latest question about the reason for the suspension, we think that is a brand new reason that the appellee provided at this level when it says, well, you know, he was basically suspended because he was being investigated. He was never suspended until he purportedly violated an order. And we think that it matters whether or not he received an order because it goes directly to pretext. We think there was enough evidence to show the falsity of the reason that he did not violate an order. He wasn't given an order, but even if he was, he didn't violate it. Because later, Sergeant Salazar gave him permission to go to the pool, which raised some inference that there was never a formal order banning Cooper not to go to the pool. Otherwise, Sergeant Salazar would have been aware and not so easily allow Cooper to go. So drawing all inferences in favor of the plaintiff, Your Honors, we do think that it shows strong evidence of pretext based on the falsity and the comparators. The same two officers that we suggest, the dispatcher, B.C., and Lieutenant R.S., were not similarly suspended. And there's also evidence of those that were also immediately suspended, which is one of them is an African-American female officer and the other is a Hispanic male officer. So we do think that supports Cooper's race and sex claims respect, respectfully. And Chief Judge Srinivasan, you brought up a concern about determination. Like, I think you were suggesting maybe you're wrong that he was investigated and they found him guilty, basically. And maybe you thought that the lieutenant's case was a little different, but the lieutenant was also investigated. She was investigated by the police department, but they, you know, we think that the investigation itself is faulty and a little bias in her favor. Sergeant Queen had a conversation with Captain Morris in person, like expressing his concerns that this investigation was not going to be conducted fairly based on his experience with the police department. Sergeant Queen is an African-American male also. And Captain Morris reassured him that normal investigation is going to be, I'll make sure it's fair. But she did not receive any discipline. And so we think, we don't think the formal investigation by HR differentiates them, because they did commit the same infractions under the same policy. So we believe that Wheeler should have been and should be applied to this case. Thank you. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Randolph